## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**SUDOOS HAMOOD**, individually,

      Plaintiff,                    Case No. 2:23-cv-10270

v.

**ARAB COMMUNITY CENTER FOR ECONOMIC AND SOCIAL SERVICES, d/b/a, ACCESS**, a Domestic Nonprofit Corporation,

      Defendant.

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff, SUDOOS HAMOOD, brings this Complaint for damages and demand for jury trial against Defendant, ARAB COMMUNITY CENTER FOR ECONOMIC AND SOCIAL SERVICES d/b/a ACCESS, and states as follows:

### <u>INTRODUCTION</u>

This is a religious discrimination lawsuit brought for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e, *et seq*, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101, *et. seq*. Ms. Hamood is a Muslim-American who wears a veil. In September 2021, Defendant implemented and enforced an illegal policy that required Ms. Hamood to **<u>remove her veil</u>** while teaching her virtual classes with her cameras on.  Ms.

Hamood objected to Defendant's illegal policy, requested a religious accommodation, and suggested several forms of reasonable religious accommodations, which include: 1) permitting Ms. Hamood to teach her virtual classes with her camera off; 2) permitting Ms. Hamood to teach her virtual classes with her camera on while wearing her veil; or 3) permitting Ms. Hamood to teach an all-female class in person with her veil off.  Defendant, however, failed to accommodate Ms. Hamood, failed to engage in the interactive process, and also failed to investigate her religious discrimination complaint.  Instead, Defendant retaliated against Ms. Hamood, and terminated her employment for "insubordination" because Ms. Hamood elected to abide by her sincerely held religious beliefs.  Defendant's abhorrent religious discrimination and retaliation violates Title VII and ELCRA.

## **PARTIES**

1.      Plaintiff, Sudoos Hamood, is a resident of the State of Michigan and resides in Wayne County, Michigan.

2.      Defendant is a Michigan Nonprofit Corporation.

3.      Defendant's principal places of business is in Wayne County, Michigan.

4.      Ms. Hamood's claims arise out of her employment relationship with Defendant.

5.      Ms. Hamood's action against Defendant is for violations of Title VII and ELCRA.

6.      Ms. Hamood is a "Person" as that term is defined by MCL 37.2103(g).

7.      At all relevant times, Defendant was Ms. Hamood's employer within the meaning of Title VII and ELCRA.

8.      At all relevant times, Defendant employed more than fifteen (15) employees.

9.      Defendant is an employer subject to Title VII.

10.     Defendant is an employer subject to ELCRA.

## JURISDICTION AND VENUE

11.      This Court has original jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. §§ 1331 and 1337.

12.      The Court has supplemental jurisdiction over Plaintiff's ELCRA claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Plaintiff's Title VII claims that they form part of the same case or controversy.

13.      The events described in this lawsuit primarily occurred in Wayne County, Michigan.

14.      Venue is proper in this Court because the alleged violations occurred within the Southern Division of the Eastern District of Michigan.

15.      Plaintiff resides within the Southern Division of the Eastern District of

Michigan.

16.     Defendant has agents and employees in the Southern Division of the Eastern District of Michigan.

17.     Defendant's principal places of business is in the Southern Division of the Eastern District of Michigan.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

18.     On January 18, 2022, Ms. Hamood filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

19.     On November 4, 2022, the EEOC issued a Determination of Charge, which states:

> "The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statutes. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes.  The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge."

20.     Ms. Hamood has timely filed this lawsuit and exhausted her administrative remedies.

## STATEMENT OF FACTS

21.     Ms. Hamood is a single mother of five children.

22.     Ms. Hamood began her employment with Defendant on or around December 26, 2016.

23.     Ms. Hamood worked for Defendant as an Instructor.

24.     In August 2019, Ms. Hamood was promoted to wok as a School Readiness Instructor.

25.     Since the beginning of the Covid-19 pandemic in March or April 2020, Ms. Hamood began teaching her students virtually.

26.     Defendant has a practice where it records some classes taught by its instructors purportedly for quality assurance purposes.

27.     Ms. Hamood taught her students virtually with her camera off until September 2021.

28.     Ms. Hamood is Muslim.

29.     In observance of her religion, Ms. Hamood began wearing a veil consistently in March or April 2020.

30.     Defendant understands that Ms. Hamood's religious beliefs dictate that she wears a veil.

31.     Defendant understands that Ms. Hamood's religious belief is that she should not show her face to a man who is not a member of her immediate family.

32.     During her employment, Ms. Hamood was the only instructor employed by Defendant who wore a veil.

33.     Ms. Hamood taught with her veil on and her camera off since the beginning of the pandemic.

34.     Ms. Hamood taught her virtual courses from Defendant's building.

35.     Defendant knew Ms. Hamood had been teaching her virtual classes with her camera off.

36.     In November 2020, Ms. Hamood received a "Proficient" rating on her annual review.

37.     Defendant's November 2020 annual review did not mention, reference, or identify any issues, concerns, or complaints with Ms. Hamood teaching virtually with her veil on or with her camera off.

38.     In September 2021, Defendant informed Ms. Hamood that she needed to begin teaching with her camera on.

39.     Defendant asserts that they created a new policy in September 2021 that required all ESL instructors to keep their cameras on during class.

40.     Defendant's "cameras on" policy only applied to ESL instructors.

41.     Prior to September 2021, Defendant did not require its instructors to keep their cameras on while teaching virtual classrooms.

42.     Ms. Hamood advised Defendant that she agreed to keep her camera on provided she wears her veil.

43.     Ms. Hamood began teaching her virtual classes from Defendant's facility with her camera on while wearing her veil.

44.     In September 2021, Defendant informed Ms. Hamood that, in

addition to teaching with her camera on, she needed to remove her veil while teaching.

45.     Defendant understands that Ms. Hamood wears a veil based on her sincerely held religious beliefs.

46.     Defendant, however, prohibited Ms. Hamood from wearing a veil while teaching her virtual classes.

47.     Upon information and belief, other instructors employed by Defendant taught their classes at that time while wearing a face mask.

48.     Ms. Hamood informed Defendant that she wears a veil in observance of her religion.

49.     Nonetheless, Defendant advised Ms. Hamood that she will be subject to progressive discipline if she does not turn her camera on and remove her veil while teaching her virtual class from Defendant's facility.

50.     On September 22, 2021, Ms. Hamood objected to Defendant's religious discrimination and failure to accommodate her request for religious accommodations.

51.     Defendant did not investigate Ms. Hamood's September 22, 2021 complaint.

52.     On September 28, 2021, Ms. Hamood met in person with Defendant's Director of Human Resources, Mosein Hussein.

53.     Ms. Hamood advised Mr. Hussein that she wears her veil in observance

of her religion.

54.     Mr. Hussein threatened to terminate Ms. Hamood's employment if she did not remove her veil while teaching.

55.     In response, Ms. Hamood made two alternative requests for religious accommodation.

56.     First, Ms. Hamood requested that she be permitted to continue teaching with her veil on while the camera was on.

57.     Second, Ms. Hamood asked if she could teach an all-female class in person with her veil removed.

58.     In October 2021, there were no coronavirus lockdown restrictions precluding Defendant from conducting these courses in person.

59.     In October 2021, teachers and professors across the country taught courses in person while wearing face masks.

60.     Ms. Hamood explained to Defendant that her religion does not permit her to teach with her veil removed while on camera because an unknown male may pass by the camera, and her religious beliefs prohibit her from being seen by an unknown male without her veil.

61.     Defendant refused to accommodate Ms. Hamood.

62.     Mr. Hussein denied Ms. Hamood's requests for accommodation without offering any alternatives.

63.     After Ms. Hamood reiterated the fact that she needed to wear her veil in observance of her religion, Mr. Hussein responded by stating: "I don't wanna talk about religion."

64.     Ms. Hamood responded, "but this is part of my religion."

65.     Mr. Hussein responded by stating: "**it's not, it's not religious**…"

66.     Mr. Hussein goes on to say, "I don't want to get into religion because religious [sic] is not the point."

67.     Ms. Hamood responded, "I'm practicing my religion."

68.     Mr. Hussein responded, "that's what you believe."

69.     Ms. Hamood responded, "That's what I believe, yes.  I think each of us, we have to respect each other."

70.     Upon information and belief, Mr. Hussein believes Ms. Hamood's sincerely held religious beliefs are incorrect.

71.     Upon information and belief, Mr. Hussein believes that Ms. Hamood is not a good representation of Defendant's business to their customers if she wears a veil.

72.     Ms. Hamood goes on to request that Defendant ask her students if her wearing a veil is causing any difficulties while they are learning.

73.     Defendant refused to ask Ms. Hamood's students if her veil is causing any difficulties.

74.     Defendant advised Ms. Hamood that she had two choices: 1) take off her veil and teach the virtual course with her camera on, or 2) be terminated from employment.

75.     During Ms. Hamood's termination meeting, Ms. Hamood advised that she had asked her students if they had any trouble understanding her with her veil on, and they advised her that they did not.

76.     Defendant responded, "we have been accommodating, we can't continue."

77.     Defendant then stated that they were losing students and they needed to stop accommodating her.

78.     Ms. Hamood responded that the number of students in her class had increased from about 10 students to about 30 students since the beginning of the pandemic.

79.     Ms. Hamood again reiterated her requests for accommodations and asked if she can teach an all-female class in person without her veil.

80.     Defendant denied this request.

81.     Defendant understood that Ms. Hamood was uncomfortable teaching without her veil on camera when males may be present but said "you have to appear on camera and you have to show your face.  That's one. If you don't want this it's going to end up for [sic] termination."

82.    Ms. Hamood again advised Defendant that she will comply with keeping her camera on but cannot do so with her veil off.

83.    Ms. Hamood again asked Defendant to ask her students if her wearing a veil created any learning difficulties.

84.    Defendant again refused.

85.    Defendant said Ms. Hamood had been accommodated for a long time, but it could not accommodate her any longer.

86.    Defendant asked if she wanted to be discharged.

87.    Ms. Hamood said she loves her job.

88.    During the meeting, Defendant then terminated Ms. Hamood's employment.

89.    Ms. Hamood's employment was terminated during this meeting.

90.    Defendant terminated Ms. Hamood's employment because Ms. Hamood refused to remove her veil while teaching virtually with her camera on.

91.    Multiple other employees of Defendant have also filed complaints of Muslim religious discrimination against Defendant with either the Equal Employment Opportunity Commission or with the Michigan Department of Civil Rights.

92.    Prior to her termination, Defendant never provided any communications to its students to advise them that they are prohibited from taking

screenshots of their computer screens during virtual classes.

## COUNT I
## FAILURE TO ACCOMMODATE RELIGION IN VIOLATION OF <u>TITLE VII OF THE CIVIL RIGHTS ACT</u>

93.     Ms. Hamood realleges and adopts all pertinent parts of paragraphs 1-92 as if set forth herein.

94.     Ms. Hamood requested a religious accommodation on numerous occasions.

95.     Defendant denied Ms. Hamood's requests for a religious accommodation.

96.     Defendant failed to engage in the interactive process.

97.     Ms. Hamood faced multiple adverse employment actions as a result of her request for a religious accommodation, including, but not limited to, loss of salary, loss of benefits, termination, an otherwise hostile work environment based on religion, and denial of Ms. Hamood's request for religious accommodation.

98.     Defendant took these adverse employment actions because of Ms. Hamood requested a religious accommodation.

99.     Defendant's actions were willful, deliberate, and intentional.

100.     Ms. Hamood's injuries that arose as a result of Defendant's conduct were foreseeable and intentionally caused by Defendant.

101.     These adverse employment actions would not have occurred had Ms. Hamood not requested a religious accommodation under Title VII.

102.     As a direct and proximate result of the Defendant's violation of the

Title VII, Ms. Hamood suffered economic damages including but not limited to, loss of wages, loss of benefits, back pay, front pay, and other expenses.

103.    As a direct and proximate result of Defendant's violation of the Title VII, Ms. Hamood has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment and the physical effects associated therewith, and will so suffer in the future.

104.    As a direct, natural, proximate and foreseeable result of the actions of Defendant, Ms. Hamood has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

105.    The conduct of Defendant was so willful and wanton and performed with malice or reckless indifference to the statutory rights of Ms. Hamood so as to entitle her to an award of punitive damages against Defendant.

106.    Ms. Hamood is entitled to recover reasonable attorney's fees and litigation expenses.

## COUNT II
## FAILURE TO ACCOMMODATE RELIGION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

107.    Ms. Hamood realleges and adopts all pertinent parts of paragraphs 1-92 as if set forth herein.

108.    Ms. Hamood requested a religious accommodation on numerous occasions.

109.    Defendant denied Ms. Hamood's requests for a religious accommodation.

110.    Defendant failed to engage in the interactive process.

111.    Ms. Hamood faced multiple adverse employment actions as a result of her request for a religious accommodation, including, but not limited to, loss of salary, loss of benefits, termination, an otherwise hostile work environment based on religion, and denial of Ms. Hamood's request for religious accommodation.

112.    Defendant took these adverse employment actions because of Ms. Hamood requested a religious accommodation.

113.    Defendant's actions were willful, deliberate, and intentional.

114.    Ms. Hamood's injuries were foreseeable and arose from Defendant's intentional conduct.

115.    These adverse employment actions would not have occurred had Ms. Hamood not requested a religious accommodation under the ELCRA.

116.    As a direct and proximate result of the Defendant's violation of the ELCRA, Ms. Hamood suffered economic damages including but not limited to, loss of wages, loss of benefits, back pay, front pay, and other expenses.

117.    As a direct and proximate result of Defendant's violation of the ELCRA, Ms. Hamood has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment and the physical

effects associated therewith, and will so suffer in the future.

118.    As a direct, natural, proximate and foreseeable result of the actions of Defendant, Ms. Hamood has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

119.    The conduct of Defendant entitles her to an award of exemplary damages against Defendant.

120.    Ms. Hamood is entitled to recover reasonable attorney's fees and litigation expenses.

## COUNT III
## HARASSMENT BY DEFENDANT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

121.    Plaintiff realleges and adopts all pertinent parts of paragraphs 1-92 as if set forth herein.

122.    Ms. Hamood was subjected harassment because of her religion and/or religious beliefs.

123.    This harassing conduct was unwelcome.

124.    This harassing conduct was sufficiently severe or pervasive to alter the terms and conditions of Ms. Hamood's employment and create an intimidating, hostile, offensive, or abusive working environment.

125.    Ms. Hamood was treated less favorably than similarly situated employees who were not Muslims exercising their religious beliefs by wearing a veil.

126.    Ms. Hamood was harassed by Defendant because she was a Muslim woman who asked to and did wear her veil in observance of her religion.

127.    The actions of Defendant as alleged above were intentionally and purposefully done to Ms. Hamood because she is a Muslim woman who asked to and did wear her veil in observance of her religion.

128.    As a direct, natural, proximate, and foreseeable result of Defendant's harassment, Ms. Hamood suffered past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

129.    The conduct of Defendant was so willful and wanton and performed with malice or reckless indifference to the statutory rights of Ms. Hamood so as to entitle her to an award of punitive damages against Defendant.

130.    Ms. Hamood is entitled to recover reasonable attorney's fees and litigation expenses.

131.    Ms. Hamood, having been harassed by Defendant, has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

## COUNT IV
## HARASSMENT BY DEFENDANT IN VIOLATION OF THE

## ELLIOTT-LARSEN CIVIL RIGHTS ACT

132.    Plaintiff realleges and adopts all pertinent parts of paragraphs 1-92 as if set forth herein.

133.    Ms. Hamood was subjected harassment because of her religion and/or religious beliefs.

134.    This harassing conduct was unwelcome.

135.    This harassing conduct was sufficiently severe or pervasive to alter the terms and conditions of Ms. Hamood's employment and create an intimidating, hostile, offensive, or abusive working environment.

136.    Ms. Hamood was treated less favorably than similarly situated employees who were not Muslims exercising their religious beliefs by wearing a veil.

137.    Ms. Hamood was harassed by Defendant because she was a Muslim woman who asked to and did wear her veil in observance of her religion.

138.    The actions of Defendant as alleged above were intentionally and purposefully done to Ms. Hamood because she is a Muslim woman who asked to and did wear her veil in observance of her religion.

139.    As a direct, natural, proximate and foreseeable result of Defendant's harassment, Ms. Hamood suffered past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other

nonpecuniary losses.

140.   The conduct of Defendant entitles her to an award of exemplary damages against Defendant.

141.   Ms. Hamood is entitled to recover reasonable attorney's fees and litigation expenses.

142.   Ms. Hamood, having been harassed by Defendant, has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

**COUNT V**
**RELIGIOUS DISCRIMINATION BY DEFENDANT IN**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

143.   Plaintiff realleges and adopts all pertinent parts of paragraphs 1-92 as if set forth herein.

144.   Ms. Hamood is a Muslim woman who asked to and did wear her veil in observance of her religion.

145.   Ms. Hamood was discriminated against and faced multiple adverse employment actions because she is a Muslim woman who asked to and did wear her veil in observance of her religion, including, but not limited to termination from employment.

146.   Ms. Hamood was treated less favorably than similarly situated employees who were not Muslim and practicing their religion by wearing a veil.

147.   The actions of Defendant as alleged above were intentionally and

purposefully done to Ms. Hamood because she is a Muslim woman who asked to and did wear her veil in observance of her religion.

148.    As a direct, natural, proximate and foreseeable result of Defendant's religious discrimination, Ms. Hamood suffered past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

149.    The conduct of Defendant was so willful and wanton, and performed with malice or reckless indifference to the statutory rights of Ms. Hamood so as to entitle her to an award of punitive damages against Defendant.

150.    Ms. Hamood is entitled to recover reasonable attorney's fees and litigation expenses.

151.    Ms. Hamood, having been discriminated against by Defendant, has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

**COUNT VI**
**RELIGIOUS DISCRIMINATION BY DEFENDANT IN**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**

152.    Plaintiff realleges and adopts all pertinent parts of paragraphs 1-92 as if set forth herein.

153.    Ms. Hamood is a Muslim woman who asked to and did wear her veil in observance of her religion.

154.    Ms. Hamood was discriminated against and faced multiple adverse employment actions because she is a Muslim woman who asked to and did wear her veil in observance of her religion, including, but not limited to termination from employment.

155.    Ms. Hamood was treated less favorably than similarly situated employees who were not Muslim and practicing their religion by wearing a veil.

156.    The actions of Defendant as alleged above were intentionally and purposefully done to Ms. Hamood because she is a Muslim woman who asked to and did wear her veil in observance of her religion.

157.    As a direct, natural, proximate and foreseeable result of Defendant's religious discrimination, Ms. Hamood suffered past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

158.    The conduct of Defendant entitles her to an award of exemplary damages against Defendant.

159.    Ms. Hamood is entitled to recover reasonable attorney's fees and litigation expenses.

160.    Ms. Hamood, having been discriminated against by Defendant, has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

**COUNT VII**
**RETALIATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT**

161.    Ms. Hamood realleges and adopts all pertinent parts of paragraphs 1-92 as if set forth herein.

162.    Ms. Hamood engaged in a protected activity when she, *inter alia*, requested a religious accommodation, and also when she objected to Defendant's religious discrimination and/or harassment.

163.    Ms. Hamood believed in good faith that she was being subjected to religious harassment and discrimination.

164.    Defendant took adverse employment actions against Ms. Hamood, including but not limited to retaliation, denial of opportunities, benefits and advantageous terms and conditions of employment, and termination of her employment.

165.    Defendant took these retaliatory actions because of Ms. Hamood engaged in protected activity.

166.    Defendant's retaliatory actions were willful, deliberate, and intentional.

167.    Ms. Hamood's injuries that arose as a result of Defendant's conduct were foreseeable and intentionally caused by Defendant.

168.    This retaliation would not have occurred had Ms. Hamood not

engaged in protected activity under Title VII.

169.    As a direct and proximate result of the Defendant's violation of Title VII, Ms. Hamood suffered economic damages including but not limited to, loss of wages, loss of benefits, back pay, front pay, and other expenses.

170.    As a direct and proximate result of Defendant's violation of the Title VII, Ms. Hamood has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment and the physical effects associated therewith, and will so suffer in the future.

171.    As a direct, natural, proximate and foreseeable result of the actions of Defendant, Ms. Hamood has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

172.    The conduct of Defendant was so willful and wanton, and performed with malice or reckless indifference to the statutory rights of Ms. Hamood, as to entitle her to an award of punitive damages against Defendant.

173.    Ms. Hamood is entitled to recover reasonable attorney's fees and litigation expenses.

174.    Ms. Hamood, having been retaliated against by Defendant, has suffered irreparable harm for which there is no plain, adequate or complete remedy

at law.

## COUNT VIII
## RETALIATION IN VIOLATION OF
## <u>THE ELLIOTT-LARSEN CIVIL RIGHTS ACT</u>

175.    Ms. Hamood realleges and adopts all pertinent parts of paragraphs 1-92 as if set forth herein.

176.    Ms. Hamood engaged in a protected activity when she, *inter alia*, requested a religious accommodation, and also when she objected to Defendant's religious discrimination and/or harassment.

177.    Ms. Hamood believed in good faith that she was being subjected to religious harassment and discrimination.

178.    Defendant took adverse employment actions against Ms. Hamood including but not limited to retaliation, denial of opportunities, benefits and advantageous terms and conditions of employment, and termination of her employment.

179.    Defendant took these retaliatory actions because of Ms. Hamood engaged in protected activity.

180.    Defendant's retaliatory actions were willful, deliberate, and intentional.

181.    Ms. Hamood's injuries were foreseeable and arose from Defendant's intentional conduct.

182.    This retaliation would not have occurred had Ms. Hamood not engaged in protected activity under the ELCRA.

183.    As a direct and proximate result of the Defendant's violation of the ELCRA, Ms. Hamood suffered economic damages including but not limited to, loss of wages, loss of benefits, back pay, front pay, and other expenses.

184.    As a direct and proximate result of Defendant's violation of the ELCRA, Ms. Hamood has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment and the physical effects associated therewith, and will so suffer in the future.

185.    As a direct, natural, proximate and foreseeable result of the actions of Defendant, Ms. Hamood has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

186.    The conduct of Defendant entitles her to an award of exemplary damages against Defendant.

187.    Ms. Hamood is entitled to recover reasonable attorney's fees and litigation expenses.

188.    Ms. Hamood, having been retaliated against by Defendant, has suffered irreparable harm for which there is no plain, adequate or complete remedy

at law.

## **<u>REQUEST FOR RELIEF</u>**

WHEREFORE, Ms. Hamood prays for damages in an amount to be determined at trial, together with interest, cost of suit, attorneys' fees, and all such other relief as the court deems just and proper, which include:

a.  Declare that the aforementioned practices and actions of Defendant constitutes unlawful employment practices in violation of Title VII and ELCRA;

b.  Award Plaintiff all lost wages, past and future, and other monetary damages to which she is entitled to including interest under Title VII and ELCRA;

c.  Award Plaintiff compensatory damages under Title VII and ELCRA;

d.  Award Plaintiff exemplary damages under the ELCRA;

e.  Award Plaintiff punitive damages under Title VII;

f.  Award Plaintiff reasonable attorney's fees, costs, and interest under Title VII and ELCRA;

g.  Award Plaintiff equitable relief including, but not limited to: an injunction directing Defendant to cease their discriminatory conduct and practices and injunctive relief directing Defendant to immediately provide all employees with a safe, non-discriminatory work

environment under Title VII and ELCRA;

h.  Award Plaintiff all other available relief available under Title VII and ELCRA; and

i.  Award Plaintiff such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  February 1, 2023

Respectfully submitted,

/s/ *Michael N. Hanna*
Michael N. Hanna (P81462)
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, MI 48075
(313) 739-1950
mhanna@forthepeople.com

*Attorneys for Plaintiff*